Van Hoesen, J.
Section 5143 of the Revised Statutes of the United States provides that a national banking association may reduce its capital stock. The principal question in this case is—Whether a national bank may, after reducing the amount of its capital stock, retain, as a surplus or for other purposes, the whole or any portion of the money which it received for the stock that is retired ? The defendant reduced its capital stock from $500,000 to 300,000. What is to become of the $200,000 which was subscribed and paid for the stock that has been called in % Must it be paid to the stockholders who surrender the retiring stock, or may it be retained by the bank ? A certificate of stock is merely the evidence of an interest in dividends as they are declared, and of a right to a pro rata distribution of the effects of the corporation on *65 hand at the expiration of the charter (Angell & Ames on Corporations, 8 Ed. sec. 560). If the defendant had determined to discontinue business and wind up its affairs, there is no doubt that the shareholders would be entitled to a distribution of whatever assets of the corporation might remain after its debts had been paid. If, instead of surrendering all its corporate powers, a corporation, by reducing its capital stock, relinquishes a portion of them, it seems to me that the shareholder may properly claim a distribution of the money which the corporate body has no longer the right to use as capital. The abandonment by a corporation of all its corporate rights gives the stockholders a right to the distribution of all the net assets. Why should not an abandonment of a portion of those rights give the stockholder a right of distribution pro tanto ? Of course, if the capital stock has been impaired, the amount to be returned to the stockholders must be diminished.
It is said that the capital of the defendant has not been impaired, but that the directors deem it advantageous to retain, as a surplus, one-half of the amount which was subscribed and paid for the stock which has been called in. The reason assigned is not, in my opinion, any justification for withholding from the plaintiff his share of the money that was paid in exchange for the stock that is retired. That money was paid as capital, and if it be no longer needed for that purpose, and if it be not required for the payment of debts, it has accomplished the end for which it was subscribed, and it ought to be returned to the shareholders. The bank has gone out of existence as a corporation with a capital of $500,000. Under a modified charter, it commences a new life with a capital of $300,000. So far as the $200,000 of reduced stock is concerned, the corporation must be considered as having surrendered its charter and wound up its business. *66 This being so, there is no doubt as to the duty it owes to the stockholders who own the retired stock.
The able counsel for the defendant insists that it is discretionary with the directors, either to return the money to the shareholders or to retain it as a surplus ; and that, by retaining it, the bank does the plaintiff no injury, inasmuch as his shares will increase in market value as they diminish in number, and he will own one two-hundredth part of the new capital stock just as he owued one two-hundredth part of the old capital stock. It is true that his proportion of the capital stock will relatively be as great as before the reduction ; but it is altogether matter of conjecture as to the future market value of a share of the reduced stock. The return of the reduced capital to the shareholders is not, however, a subject for the exercise of a director’s discretion. If the retired capital be a liability of the corporation in favor of the shareholders who give up the stock that is called in, the payment of that debt cannot lie in any man’s discretion. Payment cannot be deferred because the directors believe it for a creditor’s advantage to keep him out of his money.
When a dividend has once been declared, the directors cannot afterwards refuse to pay it because they have determined to establish a surplus fund with a view to benefit the corporation and its stockholders. The dividend, when declared, becomes a debt, and can not thenceforth be disposed of, without the. consent of him who is entitled to it (Beers v. Bridgeport Spring Co., 2 Weekly Digest 8). It would be strange if capital—capital which has accomplished its mission— could be diverted from its owners and used against their protest to build up a surplus fund, when even a dividend, once declared, cannot be.
The controversy in this case really is whether or not the defendant should be compelled to pay the" plaintiff the value of five shares, the amount which the directors *67 have determined to retain as surplus. If ordering judgment for the value of those shares would bring the litigation to a close, I should go no further than to make such an order. But it appears to be necessary to provide for the indemnification' of the plaintiff for the loss of his twenty-five shares, the transfer of which the b’ank refused to make upon its books. If I should order judgment, merely for the value of the five shares, it is possible that the defendant would refuse to give the plaintiff a new certificate for fifteen shares, and to pay him the $500 which the directors have ordered to be paid to those who consent to relinquish two-fifths of their shares. To give the plaintiff complete redress, it seems to me to be necessary to order judgment for the value of the whole twenty-five shares. The defendant is liable for that value, having refused to permit the shares to be transferred upon its books. I desire that the counsel for the defendant be served with a copy of the proposed findings.